```
                   IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE WESTERN DISTRICT OF PENNSYLVANIA
*******************************************************************
                                    :
IN RE:                              :
                                    :
WILLIAM D. RUGG, and                :    BKTCY CASE NO. 16- 70503 JAD
TAMMY R. RUGG                       :
                                    :    CHAPTER 7
     Debtors                        :
                                    :
                                    :
                                    :
*******************************************************************
                                    :
WILLIAM D. RUGG, An Individual      :
                                    :
     Plaintiff                      :    Adv. 2016-         JAD
                                    :
        v.                          :    Doc. #
                                    :
                                    :    Hearing Date:
                                    :    Hearing Time:
BASS & ASSOCIATES,PC; PATTI         :
BASS, ESQUIRE; and ROBERT           :
BRENNIEL, ESQUIRE                   :
                                    :
     Defendants                     :
                                    :
******************************************************************
```

**COMPLAINT OF DEBTOR WILLIAM D. RUGG TO HAVE BASS & ASSOCIATES, PC, PATTI BASS, ESQUIRE, AND ROBERT BRENNIEL, ESQUIRE DETERMINED TO HAVE KNOWINGLY AND INTENTIONALLY VIOLATED THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTCION ACT, 73 P.S. SECTION 201-1, ET SEQ AND FOR THE IMPOSITION OF DAMAGES, COUNSEL FEES AND COSTS AS THE RESULT THEREOF; TO HAVE KNOWINGLY AND INTENTIONALLY VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. SECTIONS 1692-1692p, AND FOR THE IMPOSITION OF DAMAGES, COUNSEL FEES AND COSTS AS THE RESULT THEREOF; AND TO HAVE KNOWINGLY AND INTENTIONALLY VIOLATED THE DISCHARGE INJUNCTION, AND TO HAVE THE DEFENDANTS FOUND IN CONTEMPT OF THE SAME BY REASON OF SAID CONDUCT, AND FOR THE IMPOSITION OF SANCTIONS, INCLUDING COUNSEL FEES AND PUNITIVE DAMAGES AGAINST DEFENDANTS, AS WELL AS TO ASSESS ALL COSTS OF THIS PROCEEDING AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY**

**COMES NOW,** the Plaintiff/ Debtor in the above proceedings, William D. Rugg, by and through his counsel, Spence, Custer, Saylor, Wolfe & Rose, LLC, and James R. Walsh, Esquire, and does file the within Complaint Of Debtor William D. Rugg To Have Bass & Associates, PC, Patti Bass, Esquire, And Robert Brenniel, Esquire Determined To Have Knowingly And Intentionally Violated The Pennsylvania Unfair

Trade Practices And Consumer Protection Act, 73 P.S. Section 201-1, Et Seq And For The Imposition Of Damages, Counsel Fees And Costs As The Result Thereof; To Have Knowingly And Intentionally Violated The Fair Debt Collection Practices Act, 15 U.S.C. Sections 1692-1692p, And for The Imposition Of Damages, Counsel Fees And Costs As The Result Thereof; And To Have Knowingly And Intentionally Violated The Discharge Injunction, And To Have The Defendants Found In Contempt Of The Same By Reason Of Said Conduct, And For The Imposition Of Sanctions, Including Counsel Fees And Punitive Damages Against Defendants, As Well As To Assess All Costs Of This Proceeding Against The Defendants, Jointly And Severally, upon a cause whereof the following is a statement, to wit:

1. The Debtor, William D. Rugg ("Rugg") is an individual with a mailing address of 5162 Cumberland Highway, Meyersdale, Pa., 15552.

2. Rugg, along with his spouse, Tammy D. Rugg, on July 11, 2016, commenced the instant proceeding by filing a voluntary Petition For Relief pursuant to Chapter 7 of Title 11 of the U.S. Code, 11 U.S. C. Section 101, et seq with this Honorable Court.

3. This Court has jurisdiction over the instant proceeding pursuant to 28 U.S.C. Sections 157 and 1334.

4. The instant matter is a "core" proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. Sections 157(b)(2)(A), (E) and (O).

5. Venue is proper in this proceeding before this Court pursuant to 28 U.S.C. Section 1408(1).

6. Defendant, Bass & Associates, P.C. ("Bass P.C.")is believed and therefore averred to be a professional corporation a mailing address of Attn.: Patti Bass, Esquire, 3936 E. Ft. Lovell Road, Suite 200, Tucson, AZ., 85712.

7. Defendant, Patti Bass, Esquire ("Bass"), is believed and therefore averred to be an individual with a last known mailing address of individual with a mailing address of 3936 E. Ft. Lovell Road, Suite 200, Tucson, AZ, 85712, and further, Bass is believed to be a member of the Bar of the State of Arizona, but is believed and therefore averred not to be a member of the bar of the Commonwealth Of Pa.

8. Defendant, Robert Brenniel, Esq. ("Brenniel ") is believed and therefore averred to be an individual with a last known mailing address of individual with a mailing address of 3936 E. Ft. Lovell Road, Suite 200, Tucson, AZ, 85712, and further, Brenniel is believed to be a member of the Bar of the State of Arizona, but is believed and therefore averred not to be a member of the bar of the Commonwealth.

9. Defendants Bass and Brenniel are believed and therefore averred to be individuals who are employed by and work for Bass P.C., and are believed to be lawyers.

10. It is believed and therefore averred that Bass is the supervisor or Brenniel, and therefore under the doctrine of Respondeat Superior, is responsible for and liable for his actions and deeds.

11. It is believed and therefore averred that Bass is the principal attorney for Bass P.C.

12. At the time of the commencement of this case, Rugg was the owner of a 2007 Suzuki Motorcycle, which was duly licensed in and by the Commonwealth of Pa., and said unit was duly scheduled on Schedule B of the Schedules filed by the Debtor as being worth $6,730.00, and being owned by the Debtor free and clear.

13. Rugg, on Schedule C of his schedules, duly claimed said 2007 Suzuki as exempt, under and pursuant to the exemptions accorded him pursuant to Section 522(d)(5) of the Code.

14. No party in interest objected to said claimed exemption, and, upon the expiration of 30 days from the date of the Section 341 meeting, said claimed exemption became absolute.

15. To have a security interest in a motor vehicle in the Commonwealth of Pa., a creditor is, among other things, required to have a written security agreement signed by the Debtor (or a series of documents, including documents signed by the Debtor, which when read together, evidence an intent to grant the creditor a security interest in specified collateral). **Matter of Bollinger Corp.**, 614 F.2d 924 (3rd Circ., 1980); **See Also, In Re Covenant at South Hills**, 410 B.R. 426 (Bktcy., W.D., Pa., 2009), and **In Re W.J. Clark Co., LTD.**, 30 B.R. 675 (Bktcy., E.D., Pa., 1983).

16. To perfect an alleged security interest in the Commonwealth of Pa., which includes a security interest in a motorcycle, which under applicable law in this Commonwealth is a motor vehicle, a creditor is required to submit an application to encumber title to the Department of Motor Vehicles, duly executed by the Debtor/owner, pay the required fees, and upon processing of the same, the DMV is required to issue a title showing the encumbrance of the creditor, 75 Pa. C.S.A. Section 1132.1.

17. Neither the creditor allegedly represented by Bass P.C., Bass and Brenniel, Calvary SPV 1, LLC, nor its alleged predecessor assignor, the identity of which is not disclosed in the documents provided by Bass P.C., Bass and/or Brenniel, filed any required application for encumbrance with the DMV, and did not pay any required fees, and did not encumber Debtor's title to the motorcycle in question.

18. Neither the creditor allegedly represented by Bass P.C., Bass and Brenniel, Calvary SPV 1, LLC, nor its alleged predecessor assignor, the identity of which is not disclosed in the documents provided by Bass P.C., Bass and/or Brenniel, is believed and therefore averred to have obtained and possess a written security agreement signed by Rugg purporting to accord it or either them a security interest in said motorcycle.

19. At the time of the commencement of this case, Rugg possessed the title to said motorcycle, as issued by the Commonwealth of Pa., and said title shows that it is and was unencumbered by any secured party, a copy of said title being attached as Ex. "1".

20. Neither Calvary SPV 1, LLC nor its alleged predecessor assignor filed a Proof of Claim asserting that it alleged it held a duly perfected security interest in said motorcycle.

21. The Debtors were duly issued a discharge by the Court of all dischargeable debt on November 16, 2016.

22. Two days after the granting of the said discharge, Defendants Bass P.C., Bass and Brenniel, despite being fully aware of Rugg being represented by counsel, forwarded a letter dated November 18, 2016, in their status as the alleged counsel to "Cavalry", to Rugg, stating:

> "We have been informed your case has been discharged.
>
> Our client is secured by a purchase money security interest in consumer goods. If you intend to voluntarily surrender the collateral, please provide the information requested below. …
>
> Sincerely,
>
> Surrender Department
> Bass & Associates, P.C.",

a copy of said Letter of November 18, 2016 being attached as Ex. "2".

23. Upon receipt of said Letter, Rugg contacted the undersigned counsel via e-mail, and stated:

> "… I received a letter today in the mail from a law firm out of Arizona. Per the letter, they are requesting that I make arrangements for collection of my Suzuki motorcycle. I called and spoke with a gentleman by the name of Bob and he informed me that my motorcycle had a lien against it from a credit card I had. The credit card was listed on our personal creditors we gave you. It is the Capital One Retail Card Acct# 0222-6011-0294-4847. I definitely was not aware of any lien against my

motorcycle and had not authorized any such transaction if this is truly the case.  I have attached a copy of the letter as well as the title of the motorcycle for your review.  Your advice is greatly appreciated."

24. Upon receipt of said e-mail, counsel responded to Rugg via e-mail dated November 23, 2016, and advised as follows, to wit:

"This is truly in my opinion a violation of the discharge injunction, and a violation of Pennsylvania's Unfair Trade & Consumer Protection Law, and may very well be a violation of the federal Fair Trade Debt Collection Practices Act.

The debt was scheduled, and has been discharged.

In order to have a secured debt, there must be a written security agreement executed by the debtor granting the "lender" a security interest in the collateral. The creditor did not provide you with the written security agreement, and I would be surprised if one existed, therefore it may not be secured at all.

More importantly, the security interest, if one exists, must be "perfected" (e.g. registered) as required by law.

For consumer goods in Pa., that "registration", (generally the filing of a UCC-1 in Harrisburg) is excepted from the "registration"/perfection requirements. Thus if went to, say, Wolfe Furniture, and bought a couch, and they had you sign the security agreement, and you did, its security interest would be valid and enforceable without the need for filing a UCC-1.

However, in Pa., the only way a security interest in a titled motor vehicle of non-dealer (e.g. your bike) can be perfected is by encumbering the title with the lien of the security interest holder, to provide note to the "world" that the asset (bike) title is secured and encumbered. Your title does not note the lien.

Thus, this alleged security interest, if it exists, which I question, is not perfected and therefore not valid, and therefore unenforceable.

Rather than engaging in litigation at this point, I would totally ignore the matter and continue business as usual. If contacted again, I would advise them you contacted your Bankruptcy counsel, read them the above, and tell them if they contact you again we will be reopening the Bankruptcy case and filing an action to enforce the discharge injunction, seek sanction and punitive damages, and counsel fees and costs, as well as actions under the Pennsylvania Unfair Trade & Consumer

Protection Law, and the federal Fair Trade Debt Collection Practices Act, all in the Bankruptcy Court.

If you have any further questions, feel free to call or e-mail me."

25. Subsequently, on or about November 28, 2016, Defendant Brenniel, acting as agent for Defendants Bass P.C. and Bass, despite knowing that Rugg was represented by counsel, again contacted Rugg directly by phone, and represented to Rugg that their alleged client, Calvary, held a purchase money security interest in said motorcycle, and that if the same was not surrendered, Rugg was required to pay to Bass, as attorney for Cavalry, the balance due upon said obligation.

26. Rugg advised Brenniel in said contact of the information in said e-mail of November 23, 2016, and Brenniel advised Rugg said information was incorrect, that his alleged client held a purchase money security interest in and to said motorcycle, and that Rugg's option were to surrender the motorcycle to Bass, as agent for Cavalry, or to pay Cavalry the balance due upon the discharged obligation, at which time Rugg informed Brenniel to contact Rugg's undersigned counsel.

27. On or about November 29, 2016, Defendant Brenniel contacted the undersigned counsel, as counsel to Rugg, and again represented that his client held an enforceable purchase money security interest in and to said motorcycle, and that Rugg was required to either surrender the same or pay the balance due upon the discharged obligation. Counsel disputed the assertion, restating the information in said referenced e-mail, and Brenniel asserted they had the required documentation, which counsel demanded be provided.

28. As of this date, said documentation has not been forthcoming.

COUNT I.

VIOLATION OF FAIR DEBT COLLECTION ACT, 15 U.S.C. SECTION 1692-1692P

29. The averments of Paragraphs 1-28 supra are incorporated herein by reference as fully as if restated herein at length.

30. Pursuant to 15 U.S.C. Section 1692c(a)(2), it is a violation of said statute for a debt collector, which included Defendants, to contact a consumer in connection with the collection of a debt, of the debt collector knows that the consumer is represented by an attorney with respect to such debt, and the debt collector has knowledge of, or

such debt collector could reasonable ascertain such attorney's name and contact information.

31. Defendants violated said statute by directly contacting Rugg, despite knowing Rugg was represented by counsel and knowing, or having the ability, to ascertain counsel's name and contact info.

32. Pursuant to 15 U.S.C. Section 1692e(2), (4), and (10), the following conduct is, inter alia, a violation of said statute, to wit, (i) a false representation of the character of said debt, (ii) a representation or implication that non-payment of any debt will result in the seizure, garnishment, attachment or other sale of any property unless such action is lawful and the debt collector intends to do such act, and/or (iii) the use of false representation or deceptiveness to collect or attempt to collect any debt.

33. Defendants violated said statute by their conduct in:

(i) falsely representing that the debt at issue was secured by an enforceable purchase money security interest, when it was not so secured;

(ii) stating or implying that the Debtor was required to either surrender the motorcycle or pay the balance due upon the obligation that Defendants admit they knew was discharged;

(iii) using false and deceptive representations that the debt was secured by a purchase money security interest and that the motorcycle either had to be surrendered or the balance due upon said discharged debt paid.

34. Pursuant to 15 U.S.C. Section 1692k, a debt collector is liable to a consumer for violations of said statute for any actual damages, such additional amounts as the Court may allow/award, not to exceed $1,000, and all costs of the action, together with reasonable attorney's fees.

WHEREFORE the Plaintiff does pray this Court to determine that Defendants, by their conduct set forth above, have engaged in repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692, and as such, to award Plaintiff such actual damages as he incurred as the result of said violations, as well as the additional sum of $1,000, and all costs of this action, including reasonable attorney's fees.

COUNT II

VIOLATION OF PA. UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT, 73 P.S. Section 201-1, ET SEQ

35. The averments of Paragraphs 1 through 34 of the within Complaint are incorporated herein by reference as fully as if restated at length.

36. Pursuant to the logic and rationale of **Gabriel v O'Hara**, 534 A.2d 488, 494, n. 20, the violation of consumer protection laws is a per se violation of the CPL of Pa.

37. The Pa. Consumer Protection Law, inter alia, precludes and is intended to protect consumers in this Commonwealth from unfair trade and deceptive practices, which include conduct which creates a likelihood of confusion or misunderstanding on the part of a consumer.

38. Defendants actions and communications in violating the Fair Debt Collection Practices Act, as well as engaging in conduct intended to and likely to create confusion or misunderstanding on the part of a consumer constitute violations of the Pa. Consumer Protection Law(s).

39. Solely and exclusively as the result of Defendants unfair, misleading and deceptive practices and conduct, Rugg was required to and did incur costs and expenses in ascertaining his obligations and the truth and merit of Defendants assertions and communicating with Defendants, as well as responding to their misleading and deceptive representations, to wit, counsel fees and costs in seeking counsels advice as to the merit of Defendants assertions, and in counsel communicating with Defendants in response to their contacting counsel.

40. Pursuant to 73 P.S. Section 201-9.2, Rugg, as an individual who suffered an ascertainable loss of money as the result of said actions of Defendants, has a private cause of action against Defendants.

WHEREFORE, the Plaintiff does pray this Court to determine that Defendants, by their conduct set forth above, have engaged in repeated violations of the Pa. Unfair Trade Practices & Consumer Protection Act, 73 P.S. Section 201., et seq, and as such, to award Plaintiff actual damages, in an amount of not such less than $100, whichever is greater in the discretion of the Court, an award of up to treble actual damages, but not less than $100, as well as all costs of this action, including reasonable attorney's fees, pursuant to 73 P.S. Section 201-9.2.

41. The averments of Paragraphs 1-40 are incorporated herein by reference as fully as if restated herein at length.

42. As averred above, Defendants, by their conduct, as professionals engaged in debt collection activities and being required to adhere to the standards of professionals engaged in such conduct and activity, violated knowingly and intentionally the Fair Debt Collections Act.

43. As averred above, Defendants, by their conduct, as professionals engaged in debt collection activities and being required to adhere to the standards of professionals engaged in such conduct and activity, violated knowingly and intentionally the Pa. Unfair Trade Practices And Consumer Protection Act.

44. All of said actions occurred after the granting to the Debtor/Plaintiff/Rugg of a discharge by this Court.

45. As is self-evident from Defendants letter to Plaintiff of November 18, 2016, Defendants at the time they began their course of conduct, were fully aware of the Debtor having commenced the instant case, and of this Court having granted the Debtor a discharge.

46. Defendants, as professionals engaged in the business of debt collection, knew or should have known that the alleged creditor did not have a security interest in said motorcycle, that the alleged creditor did not have a perfected security interest in said motorcycle, that the debtor was not aware of the alleged assignment of the debt to Calvary as Defendants allege, and therefore that the Defendant's conduct in asserting it held a purchase money security interest in said motorcycle was false and deceptive conduct.

47. The Defendants, in their discussions and contacts with the Debtor, after July 11, 2016, represented that the Debtor's options were to surrender the motorcycle to the alleged creditor or pay the alleged creditor the amounts they represented were due upon the obligation.

48. Debtor/Plaintiff asserts that such actions were violations of the discharge injunction. **In Re Brown**, 481 B.R. 351 (Bktcy., W.D., Pa., 2012) (Sending out mortgage statements after discharge found to be a violation of discharge injunction).

49. "Courts have determined that the remedy available to a debtor asserting a violation of the discharge injunction is a civil contempt proceeding pursuant to § 105(a). See *Bonanno,* 2009 WL 8556815, at \*5, 2009 Bankr.LEXIS 5544, at \*12–13." **Brown**, supra at 357.

50. "In order to establish civil contempt, the debtor must prove that "(1) a valid court order existed; (2) the alleged contemnor knew

of the order; and (3) the contemnor disobeyed the order." *See Bonanno, 2009 WL 8556815, at \*6, 2009 Bankr.LEXIS 5544, at \*13-14*." **Id**.

      WHEREFORE, the Debtor/Plaintiff does pray this Court to determine that Defendants actions described above were and are violations of the discharge injunction, to determine that the Defendants knew of the discharge and its related discharge injunction, and to determine that despite the discharge injunction, Defendants engaged in the above referenced deceitful and misrepresentational conduct in violation of the discharge injunction, and as such, as are in contempt of this Court's discharge injunction, and accordingly, to award actual damages (including damages for emotional distress suffered by the Debtor as the result of Defendants conduct and actions in violation of the stay), punitive damages as sanctions and counsel fees and costs in accord with Section 105 of the Code, and further, he does authorize his counsel, James R. Walsh Esquire and Spence, Custer, Saylor, Wolfe & Rose, LLC, to file the within pleading on his behalf.

                                          Spence, Custer, Saylor, Wolfe & Rose, LLC
                                          By:  /s/ James R. Walsh
                                          James R. Walsh, Esquire
                                          1067 Menoher Blvd.
                                          Johnstown, Pa., 15905
                                          Pa. I.D. # 2701
                                          Phone: (814)536-0735
                                          Fax: (814)539-1423
                                          e-mail:JWalsh@spencecuster.com
                                          Attorneys For Debtor/Plaintiff

JRW/ Rugg/ Complaint v Bass, P.C., et al/ 12-25/16